```
UNITED STATES DISTRICT COURT
  MIDDLE DISTRICT OF TENNESSEE
        NASHVILLE DIVISION

TAVARES S. JONES,              )
                               )
       Petitioner,             )   No. 3:08-0224
                               )   (Criminal Case
   v.                          )   No. 3:05-00140)
                               )   Judge Echols
UNITED STATES OF AMERICA,      )
                               )
       Respondent.             )
```

## MEMORANDUM

Pending before the Court is Petitioner Tavares Jones' "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (Docket Entry No. 1). The Government has filed a response in opposition to that motion (Docket Entry No. 14), to which Petitioner has replied (Docket Entry No. 16).

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 17, 2005, a federal grand jury returned a five-count Indictment against Petitioner and six other individuals. Petitioner was charged in Count One with conspiracy to distribute and possession with intent to distribute 5 kilograms or more of cocaine. He was also charged in Count Two with being a convicted felon in possession of a firearm. Finally, in Count Three Petitioner was charged with using and carrying a firearm during and in relation to a drug trafficking crime.

1

The case was scheduled for a jury trial commencing on March 14, 2006. If convicted, Petitioner faced a mandatory life sentence because the Government had filed a notice of enhancement under 21 U.S.C. § 851 based on Petitioner's convictions for possessing and distributing controlled substances.

After a jury had been empaneled, but before opening statements, Petitioner entered a plea of guilty to Count One of the Indictment. The guilty plea to Count One was pursuant to a binding written Plea Agreement ("PA") under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. In both the PA and the accompanying Petition to Enter a Plea of Guilty ("Petition"), Petitioner acknowledged that the statutory penalty for Count One was not less than twenty years, nor more than life imprisonment. In the PA, however, the parties agreed that the applicable sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or Guidelines) was 292-365 months, based upon an Offense Level of 35 and a Criminal History Category VI. The parties further agreed that the appropriate sentence was 300 months, followed by 10 years of supervised release.

On April 14, 2006, Petitioner's counsel, Rayburn McGowan, Jr., filed a Motion to Withdraw as attorney for Petitioner. That request was granted and counsel James Simmons ("Simmons") was appointed to represent Petitioner. On October 18, 2006, Simmons filed a Motion to Withdraw as Attorney. As a part of that Motion,

2

Simmons asked that Petitioner be allowed to withdraw his plea of guilty, even though Simmons indicated that in his professional judgment it was not in the Petitioner's best interest to have the plea withdrawn. On December 12, 2006, the Court granted Simmons' request to withdraw from representing Petitioner and indicated that Petitioner's request that he be allowed to withdraw his guilty plea would be set for hearing after the appointment of substitute counsel.

Patrick T. McNally ("McNally") was then appointed to represent Petitioner. On January 12, 2007, McNally filed a "Notice of Defendant's Intention to Strike his Motion to Withdraw His Guilty Plea and Proceed to Sentencing on January 22, 2007." Thereafter, the parties filed their respective Sentencing Positions. Neither the Government nor the Petitioner had any objection to the Presentence Report ("PSR") or its Guideline calculations which were consistent with the calculations contained in the PA.

On January 22, 2007, following a sentencing hearing, Petitioner was sentenced to 300 months imprisonment on Count One,[1] followed by 10 years of supervised release. This sentence was in accordance with the PA. On March 3, 2008, Petitioner filed the present Motion to Vacate, Set Aside or Correct his sentence.

---

[1] Counts Two and Five of the Indictment were dismissed on motion of the Government.

3

## II. STANDARD OF REVIEW

To prevail on a § 2255 motion, the Petitioner must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993). Claims of error must be raised in the trial court and on direct appeal or such claims are procedurally defaulted. See Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Petitioner is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the trial judge also hears the collateral proceedings, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

4

## III. ANALYSIS

All of Petitioner's claims relate to the alleged ineffective assistance of counsel. To establish ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). In the context of a guilty plea, this means that a Petitioner must show "prejudice by demonstrating a reasonable probability that, but for counsel's errors, [the Petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Srickland, 466 U.S. at 697. A court need not address both parts of the Strickland test if the petitioner makes an insufficient showing on one. Id.

Petitioner first claims counsel was generally ineffective in allowing him to plead guilty. Essentially, Petitioner asserts that

5

his plea was not knowing and voluntary, that he "was virtually without counsel" and that he was "bewildered by the Court proceedings which were strange and unfamiliar to him[.]" (Docket Entry No. 2 at 6).

Petitioner's general claim of involuntariness is belied by the record in this case. In his Petition to plead guilty, Petitioner acknowledged telling his counsel the facts and circumstances concerning the Indictment, that counsel advised him as to the nature and cause of every accusation against him, that his lawyer explained to him all elements of the crimes charged and what would have to be proved, and that counsel thoroughly discussed all of the potential defenses to the crime charged. (Case No. 3:05-00140, Docket Entry No. 163, Petition at 1). Petitioner also acknowledged his lawyer had done all he could to counsel and assist Petitioner, counsel did all the investigation Petitioner asked him to, and Petitioner was satisfied with the representation. (Id. at 4). Petitioner further indicated that he was offering his plea of guilty freely and voluntarily and of his own accord. (Id. at 4).

Likewise, in his PA, Petitioner indicated he read and understood the charges against him, he was entering the PA voluntarily, he was guilty of the charge contained in Count One, and that, while he was facing a possible mandatory life sentence, the parties agreed that the appropriate sentence was 300 months. Petitioner also represented he read and reviewed with counsel all

6

the provisions in the PA and that he was voluntarily accepting each and every term in the PA. (Case No. 3:05-00150, Docket Entry No. 163, Petition).

Further, during the change of plea hearing, the Court thoroughly reviewed with Petitioner his constitutional rights, the maximum penalties provided by law, the nature and terms of the PA, and the consequences of the PA on the Petitioner. The Court made specific inquiry into whether Petitioner was knowingly and voluntarily changing his plea to guilty.

At the start of the change of plea hearing, the following exchange occurred:

> Court: All right. Is your decision to plead guilty a result of further discussions you've had with your lawyer, Mr. McGowan, and discussions that he's had with the United States Attorney's office about your case?
> Deft: Yes, sir.
> Court: Do you believe that Mr. McGowan is fully aware of all the facts surrounding not only your case, but surrounding your decision to plead guilty in this case?
> Deft.: Yeah.

(Change of Plea Hearing Tr. at 29). After Petitioner expressed some concern that he would not receive a fair trial because law enforcement officers would testify against him, the following colloquy occurred:

> THE COURT: Well, I'm going to do the best I can to make sure that it's fair. I can't make it go in your favor. I can't make it go in the Government's favor. Whatever people testify to will be what the jury hears. And your lawyer will be able to cross examine them.
> And if you want to take the stand, you can take the stand and put on any testimony that you wish to

7

contradict or explain what took place. You can tell your
version of the facts.
THE DEFENDANT: I mean, I understand, you know, my lawyer
is doing everything he can do. But, you know, these law
enforcement, man, they -- that's who they going to
believe, man. And he may be good and whatever, but, man
– we all know, man.
THE COURT: Well, I told you a while ago, if you're not
guilty I would advise you not to plead guilty. But if you
are guilty, then you need to consider whether it's to
your advantage or your disadvantage to plead guilty.
THE DEFENDANT: I'm not trying to get no light sentence,
man. Whatever it is, man.
THE COURT: Well, I have to find out if you know what
you're doing and you're voluntarily and willingly
agreeing to plead guilty because of an agreement you've
made with the Government.
    And you have to acknowledge your guilt. But I'm not
going to take your plea of guilty if you're not guilty.
I mean I'm going to ask you if you're pleading guilty
because you are guilty. And if you're not guilty, then
I'm not going to take your guilty plea. We're going to
have a trial.
THE DEFENDANT: Yeah. Yeah. Yes, sir.
THE COURT: So I know you're struggling with your
decision, because the option is not a good one. But
that's why I have to make sure you understand what you're
doing by pleading guilty.
    By pleading guilty, you're waiving your right to
this jury trial and there won't be a trial. There won't
be any witnesses. By pleading guilty, we're going to set
a sentencing hearing. That's the next thing we'll do.
THE DEFENDANT: All right.
THE COURT: Pardon me?
THE DEFENDANT: (Nods head.)
THE COURT: So you say you have discussed with Mr. McGowan
how the trial might go and what the proof might be.
THE DEFENDANT: Yes.
THE COURT: Are you satisfied with the advice that your
lawyer has given you up to this point?
THE DEFENDANT: Yes, sir.

(Id. at 43-45).

A plea colloquy is a solemn event and "dispositions by guilty

pleas are accorded a great measure of finality." Blackledge v.

Allison, 431 U.S. 63, 71 (1977). Because courts must be able to rely on a defendant's statements during a plea colloquy, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. McMaster, 403 F.3d 216, 221 (4th Cir. 2005)(collecting cases).

Here, Petitioner, under oath, informed the Court that his plea was voluntary, he understood the terms of the agreement, and he discussed the terms of his plea with counsel. Further, his claimed "bewilderment" of the system must be rejected in light of Petitioner's lengthy criminal record and the fact that he has pled guilty to assorted crimes over the years.

Apart from his general allegation of ineffectiveness, Petitioner claims counsel was ineffective because he did not investigate Petitioner's mental competence to enter a guilty plea, even though Petitioner asked him to do so. This assertion is directly contradicted by the record.

In his Petition, Petitioner stated: "My lawyer has done all that anyone could do to counsel and assist me, and I understand the proceedings in the case against me. My lawyer has done all the investigation and research in this case that I have asked him or her to do and I am satisfied with his representation at this point." (Case No. 3:05-00140, Petition, Docket Entry No. 149 at

9

3). When specifically asked during the change of plea hearing whether he had any complaints about his lawyer's investigation or whether counsel should have done more, Petitioner voiced no objections, but instead stated that his counsel was "all right." (Change of Plea Hrg. Tr. at 45).

The competency of a defendant to enter a guilty plea is subject to the same standard as that used to determine the competency to stand trial, meaning that the defendant must have sufficient present ability to consult with his lawyer in a meaningful way and have a "rational and factual understanding of the proceedings against him." United States v. Godinez, 509 U.S. 389, 396 (1993). Entry of a guilty plea by an incompetent defendant violates procedural due process and a court has the obligation to sua sponte make an inquiry when there is reason to doubt a defendant's competency. See, Drope v. Missouri, 420 U.S. 162, 171-72 (1975).

In this case, Petitioner stated during the change of plea hearing he was suffering depression because he had been the victim of a shooting in a home invasion in which his brother was also shot and a friend was killed and that he blamed his wife infecting him with the HIV virus. Those factors were thoroughly discussed during the change of plea hearing but say absolutely nothing about Petitioner's ability to knowingly and voluntarily enter a plea of guilty to Count One. The Court asked Petitioner whether his mind

10

was clear and he knew what he was doing in pleading guilty to Count One and Petitioner responded "I'm all right." (Change of Plea Hrg, Tr. at 63). The Court then asked Petitioner's counsel and counsel for the Government whether they believed Petitioner was competent to enter a guilty plea and both responded in the affirmative. (Id. at 64). The Court then made a finding, based upon Petitioner's responsiveness to the questions asked of him and the Court's observations of him, that Petitioner was in "full possession of his faculties and is competent to plead guilty." (Id. at 65). There was simply nothing before the Court at the time of the taking of the plea that Petitioner was incompetent or that his plea was not knowing and voluntary.

Attached to his present Motion are several reports from a clinical social worker, all of which indicate that Petitioner claimed he was depressed in late 2004 and early 2005, but none of which indicate that Petitioner was mentally incompetent. Petitioner's claimed depression stemmed from the home invasion shooting and his belief that his wife gave him the HIV virus.

The presence of a disease or condition (including depression), is not the test for competency. United States v. Powell, 42 Fed. Appx. 565, 568 (4th Cir. 2002). Instead, the question is whether the defendant can effectively and rationally communicate with his counsel and make an informed decision. In this case, the record before the Court, including Petitioner's own statements under oath,

11

shows that Petitioner was competent at the time he entered his plea, he understood what was happening, and he voluntarily chose to plead guilty. While he may have been depressed, this does not prove that he was mentally incompetent. See, United States v. Williams, 216 Fed. Appx. 165, 173-74 (11th Cir. 2008)(even though defendant was confirmed to have suffered from post-traumatic stress disorder, competency hearing was not necessary where there was no medical report or opinion indicating that Defendant was incompetent to stand trial); Nowak v. Yukins, 46 Fed. Appx. 257, 259 (6th Cir. 2002)(even though medical records indicated defendant suffered from significant depression, they did not reflect she was mentally incompetent); Hernandez v. United States, 1998 WL 59106 at *2 (2d Cir. 1998)(petitioner not entitled to relief under section 2255 where he claimed that he was incompetent to enter a guilty plea, but only conclusory assertions supported that allegation).[2]

Petitioner next asserts that counsel was ineffective because he coerced Petitioner to plead guilty, claiming counsel told Petitioner he would only be sentenced to 15 years imprisonment.

---

[2]In his Memorandum in support of his Motion, Petitioner argues that his mental competence or incompetence was a significant concern because the Court included in the Judgment and Commitment Order a Special Condition of Supervision that defendant participate in a mental health program as directed by the Probation Officer. (Docket Entry No. 253 at 4). This is a relatively common condition of supervised release and certainly no indication that the Court considered Petitioner to be mentally incompetent at the time he changed his plea or any time thereafter.

12

Again, Petitioner's claims are belied by his own statements and acknowledgments.

In addition to the evidence already discussed relating to the overall voluntariness of his plea, the record shows Petitioner knew full and well that he was agreeing to a 300 month sentence, not a sentence of 15 years. The PA specifically provided on two separate occasions that the agreed upon sentence was 300 months. In discussing the "Sentencing Range" provision, the agreement indicated that "This Plea Agreement is governed, in part, by Federal Rules of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment of 300 months in the custody of the Bureau of Prisons." (Case No. 3:05-00140, Docket Entry No. 163, PA at 15). Shortly thereafter, in the section captioned "Agreements Relating to Sentencing," the PA provides that "[t]he parties agree that a sentence of 300 months imprisonment, followed by 10 years supervised release, is the appropriate sentence in this case as to this defendant." (Id.). During the change of plea hearing, the Court thoroughly reviewed the sentencing provision in the PA and in particular the 300 month agreement between the parties. When asked if he had any questions about those provisions, Petitioner responded "No, Sir." (Change of Plea Hearing Tr. at 61-62).

Petitioner's claim that counsel told him the actual sentence would be 15 years is also unsupported by the record. In the

13

Petition, Petitioner acknowledged that the only agreements with regard to sentencing were in the PA and that there were no other representations regarding sentencing other than that found in the PA. In the PA, which set forth the 300 month agreement, Petitioner confirmed that no promises, agreements or conditions had been made, other than those contained in the PA. The Court also inquired about promises or representations other than those contained in the PA during the change of plea hearing:

> THE COURT: Do these two documents that I have mentioned to you, the *Petition to Enter a Guilty Plea* and the *Plea Agreement*, state every understanding you have with the Government about your case?
> THE DEFENDANT: Yes.
> THE COURT: Has anything else been promised to you by way of leniency in order to get you to plead guilty?
> THE DEFENDANT: No, sir.
> THE COURT: Has anybody put any physical pressure on you or any psychological pressure on you in order to get you to plead guilty?
>     Has anybody twisted your arm or done anything of that sort?
> THE DEFENDANT: No, sir.
> THE COURT: You know, of course, if I accept the *Plea Agreement* I'll be bound by the recommendation contained in that in terms of my sentence. Has anybody else guaranteed you -- if you were otherwise to go to trial, has anybody tried to guarantee you what sentence the Court would impose outside the *Plea Agreement*?
> THE DEFENDANT: No, sir.

(Change of Plea Hrg. Tr. 62-63).

Given the clear and unequivocal record and the solemnity afforded a plea hearing, the Court rejects Petitioner's unadorned assertion that he was coerced into pleading guilty because of

14

counsel's alleged promise that Petitioner would be sentenced to fifteen years imprisonment.

Finally, Petitioner contends counsel was ineffective because he allowed Petitioner to plead guilty as a career offender under the Guidelines and the Court committed plain error in sentencing him as a career offender. Notwithstanding his present claim to the contrary, the fact that Petitioner was going to be sentenced as a career offender was certainly no surprise to the Petitioner. The PA Petitioner signed specifically stated, "defendant agrees that he is a Career Offender, pursuant to U.S.S.G. § 4B1.1, because the defendant has two or more prior felony drug trafficking convictions that qualify him for enhanced punishment as a career offender." (Docket Entry No. 163, PA at 14). During the taking of the plea, the Court specifically apprized Petitioner about the career offender provisions of the Guidelines and that Petitioner agreed he qualified for those provisions. (Change of Plea Hrg. Tr. at 5, 49, 50 & 59).

Nor was counsel ineffective in failing to challenge the career offender enhancement. An individual qualifies as a career offender if: "(1) the defendant was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant

15

has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.

In this case, the PSR indicates Petitioner has a lengthy criminal record, and was thrice-convicted of selling or possessing with intent to sell controlled substances for which he received suspended sentences of three, four, and five years. Petitioner clearly met the criteria for being adjudged a career offender, counsel was not ineffective in failing to argue to the contrary, and the Court did not err in sentencing Petitioner as a career offender.[3]

## IV. CONCLUSION

Petitioner's plea did not occur in a vacuum. He was not a neophyte to the criminal justice system, having previously been convicted of drug trafficking crimes, among other things. Petitioner was charged with six others in a conspiracy to distribute five or more kilograms of cocaine while armed with a firearm. As Petitioner's trial neared, his co-defendants pled guilty and agreed to cooperate with the Government. Faced with the prospect of a mandatory life sentence due to the enhanced penalties for being a career offender, Petitioner opted to plead guilty and

---

[3]In his Memorandum, Petitioner baldly asserts that his convictions were for misdemeanors and he never was sentenced to more than 364 days in jail. There is no competent evidence that any of the relied upon convictions were misdemeanors and the fact that Petitioner may not have actually been incarcerated for a year or more does not transmogrify a felony conviction into a misdemeanor conviction.

16

agreed to a 300 month sentence. That agreement was knowing and voluntary. Petitioner has provided nothing which would suggest that he was prejudiced by counsel's performance and that but for that performance he would have insisted on going to trial.

Accordingly, Petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Docket Entry No. 1) will be denied and this case will be dismissed. No Certificate of Appealability will issue because reasonable jurists would not dispute this Court's conclusion that Petitioner knowingly and voluntarily agreed to plead guilty to Count One of the Indictment in exchange for a 300 month sentence.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE